UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FREEDOM WATCH,
    Plaintiff,

v.

BUREAU OF LAND MANAGEMENT, *et al.*,
    Defendants.

Civil Action No. 16-2320 (CKK)

**MEMORANDUM OPINION AND ORDER**
(May 15, 2017)

The Court is in receipt of the parties' [26] Status Report, which relays the respective positions of Plaintiff and Defendant Bureau of Land Management ("BLM") regarding the pace of production in this action pursuant to the Freedom of Information Act ("FOIA"). By way of background, Plaintiff's FOIA request seeks the production of 22 categories of documents, dating back to at least 2010, and which are chiefly related to Cliven Bundy, his pending criminal trial in the United States District Court for the District of Nevada, and the circumstances precipitating that case. *See* Compl., ECF No. 1, ¶ 5. In addition to BLM, Plaintiff's FOIA request involves two components of Defendant Department of Justice ("DOJ"): the Civil Division ("DOJ Civil"), and the Federal Bureau of Investigation ("FBI"). *See* Joint Status Report, ECF No. 12, at 1. DOJ Civil has completed its production of non-exempt responsive materials, and additional information is forthcoming from the FBI.

By Order dated April 12, 2017, BLM was instructed to produce certain Priority Documents by June 5, 2017, and to file a status report by April 28, 2017, indicating when the remainder of the Priority Documents[1] could be produced. BLM was also instructed to include, in the same Status Report, a proposed schedule for the production of non-Priority Documents, based on an estimate of how many documents it could include in each of a series of interim releases, slated to occur every 4 to 6 weeks. Order, ECF No. 21, at 2 ("April Order"). That Status Report was filed on April 28, 2017, and indicated that BLM had, ahead of schedule, completed its production of all Priority Documents. Status Report, ECF No. 23, at 1. In the same report, BLM estimated that there were approximately 267,000 potentially relevant non-Priority Documents, but relayed that it could not yet estimate the volume of documents that would be included in each interim release, given the "breadth of some of the categories of documents requested," and because "the pool of potential custodians is expected to be extensive and could involve a large percentage of BLM's entire workforce." *Id*. at 2. BLM proposed to provide a more detailed schedule once it completed its search for responsive documents, which it expected to occur within 90 days. *Id.*

---

[1] The Court previously defined "Priority Documents" to refer to the combination of "documents responsive to categories 15 through 20 of Plaintiff's FOIA request," and responsive documents obtained by running keyword searches using the terms "force" and "love." April Order, at 2.

1

Plaintiff filed a response to BLM's Status Report on May 5, 2017. Therein, Plaintiff seeks immediate production of the requested materials and alleges, without any evidentiary support, that it "is apparent that BLM wishes to delay production of document[s] until after Cliven Bundy has been tried, and possible[y] convicted and sentenced to life imprisonment." Pl.'s Response to BLM's Status Report, ECF No. 24. After receiving Plaintiff's response, the Court issued an Order requiring the parties to file a further Joint Status Report indicating whether Plaintiff had requested expedited processing for its FOIA request. Once filed, that Status Report informed the Court that expedited treatment had not been requested, but Plaintiff also used the filing as a further opportunity to levy unsubstantiated charges of misconduct against Defendants and their counsel in this case. In particular, Plaintiff referenced a decision by United States District Court Judge Andrew S. Hanen, of the United States District Court for the Southern District of Texas, wherein he sanctioned attorneys of the Federal Programs Branch of the DOJ. *Texas v. United States*, No. B-14-254, 2016 WL 3211803 (S.D. Tex. May 19, 2016). However, although the Court certainly does not endorse the egregious conduct at issue before Judge Hanen, there is no evidence that any of the government attorneys working on this matter had any involvement in the case before Judge Hanen, nor did that case involve the same agencies as those before this Court. Furthermore, the government attorneys appearing in this case have met the obligations imposed on them by both this Court and United States District Court Judge Ketanji Brown Jackson, to whom this matter was previously assigned, or have provided credible, good faith reasons for being unable to meet those obligations, given the specific factual circumstances of this case. Consequently, until Plaintiff can proffer actual evidence of misconduct specific to this matter, the Court shall pay no credence to Plaintiff's generalized and unsupported claims of misconduct against either Defendants or their attorneys.[2]

Turning to the merits of Plaintiff's request for the immediate production of responsive materials, the Court finds no basis in fact or law for granting this extraordinary relief. Plaintiff in each of its pleadings repeats or implies that the immediate release of the requested materials is necessary for the defense of Cliven Bundy. Importantly, however, neither Plaintiff nor its counsel represent Mr. Bundy in his criminal case, although Mr. Klayman serves as a self-described "advisor." Status Hr'g Tr., ECF No. 18, 5:4–5:5; Pl.'s Response to Ct's Order of April 12, 2017, ECF No. 22, at 1. Regardless of Mr. Klayman's involvement in that case, however, as both this Court and Judge Jackson have previously held, the proper mechanism for Mr. Bundy to obtain potentially exculpatory evidence is through the criminal discovery process. To the extent Mr.

---

[2] The Court has also reviewed the case before United States District Judge Royce C. Lamberth that Plaintiff referenced during the status hearing. Status Hr'g Tr., ECF No. 18, 50:14–51:25. Needless to say, there is no evidence that the extreme factual circumstances of that case—which involved the destruction and removal from agency custody of responsive materials—are in any way replicated in this matter. *See generally Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 28 (D.D.C. 1998). Furthermore, given the absence of any indicia of bad faith by the government in this matter, the Court sees no reason to permit discovery at this time. *See Landmark Legal Found. v. E.P.A.*, 959 F. Supp. 2d 175, 183 (D.D.C. 2013) ("Discovery is the exception, not the rule, in FOIA cases." (internal quotation marks omitted)); *Justice v. I.R.S.*, 798 F. Supp. 2d 43, 47 (D.D.C. 2011) ("Courts permit discovery in FOIA cases where a plaintiff has made a sufficient showing that the agency acted in bad faith." (internal quotation marks omitted)), *aff'd*, 485 F. App'x 439 (D.C. Cir. 2012).

Bundy believes that the government has withheld pertinent materials in his criminal case, the most direct and appropriate means for Mr. Bundy to obtain those materials is to seek relief before the district court judge adjudicating that matter. Plaintiff has never represented that Mr. Bundy is unable to do so, and as such, the pertinence of the requested materials to Mr. Bundy's criminal defense does not weigh in favor of immediate or expedited processing of Plaintiff's FOIA request.

Plaintiff also relies upon the public interest in the materials sought. Although the Court in no way doubts that the public has an interest, perhaps even a substantial one, in the requested materials, Plaintiff has done nothing to separate itself from the multitude of others FOIA requests made by other parties that likewise claim a substantial public interest in the materials they seek. As Defense counsel explained during the March 16, 2017 status hearing before Judge Jackson, FOIA requests are processed by Defendants in the order they are received (i.e., in a queue), and given the finite resources afforded to agencies for this task, expediting one request necessarily means that another is delayed. Status Hr'g Tr., ECF No. 18, 34:4–34:11; *see Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 15 (D.D.C. 2015) ("diverting resources to accelerate processing of the plaintiff's request necessarily will redound to the detriment of other requesters"). Here, Plaintiff has not justified putting its requests above others. First, Plaintiff did not request expedited processing of its FOIA request. Had it done so, and had its request qualified, Plaintiff's FOIA request would have been placed in a separate, expedited queue. Although Plaintiff apparently seeks to make this request now before this Court, by way of its most recent Status Report, *see* ECF No. 26, the FOIA statute indicates that judicial review in this context applies solely to "[a]gency action to deny or affirm denial of a request for expedited processing . . . and failure by an agency to respond in a timely manner to such a request . . . ." 5 U.S.C. § 552(a)(6)(E)(iii). Because there has been no request for expediting the processing before the relevant agencies in this matter, there is no agency action for this Court to review with respect to expedited processing.[3]

Plaintiff makes two further points in support of its request for immediate production. First, Plaintiff claims that it is entitled to relief because BLM has not provided responsive documents within the 20-day time period set forth in 5 U.S.C. § 552(a)(6)(A)(i). Nonetheless, the only penalty for an agency failing to meet this deadline is "that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013). Rather, after the 20-day period has elapsed and plaintiff files suit, the district court exercises supervision over the agency's review and production of responsive materials, as have two judges of this District Court.

---

[3] Plaintiff also claims entitlement to expedited processing because it previously brought another FOIA action before this Court requesting similar categories of documents, and consequently, claims that "Defendants were on notice." Joint Status Report, ECF No. 26, at 1. Nonetheless, in that case, the government presented credible evidence that it never received Plaintiff's FOIA requests, and by Plaintiff's own admission, the instant case was filed to obviate the question of whether the earlier FOIA requests were received. *Freedom Watch v. Bureau of Land Mgmt.*, No. CV 16-992 (CKK), 2016 WL 6304653, at *3 (D.D.C. Oct. 27, 2016); Status Hr'g Tr., ECF No. 18, 12:7–12:14. In any event, Plaintiff has not proffered any legal support for the notion that Defendants being on "notice" of a purported FOIA request entitles Plaintiff to expedited processing of that request, once it is properly submitted and received.

Second, Plaintiff asserts that immediate production should be ordered because Defendants have already assembled the requested materials for purposes of Mr. Bundy's criminal trial, and therefore should turn those materials over to Plaintiff. Yet, as Defense counsel explained during the status hearing, that is not how Defendants ordinarily process FOIA requests. Rather, Defendants engage in a systematic process by which the requests are sent to the appropriate record custodians at each agency, so they may engage in a comprehensive search for responsive materials. Status Hr'g Tr., ECF No. 18, 35:7–36:5; 42:10–42:23. The Court sees no reason to deviate from this procedure here. For one, the records that may be responsive to Plaintiff's FOIA request are not necessarily the same records that would be produced in the course of criminal discovery, given the exemptions and privacy interests applicable to the former, but not necessarily the latter. Furthermore, to process FOIA requests in this manner would likely cause further delay to the ultimate completion of the government's review and production of responsive materials, as Defendants would first need to review and produce materials from the set of documents produced in the criminal case, and then proceed to the more comprehensive search already discussed. In other words, there could be a substantial duplication of effort. Lastly, Plaintiff's position on this front is at odds with its contention that its FOIA request is somehow necessitated by Mr. Bundy's criminal prosecution, as producing documents via FOIA that already have been produced via the criminal discovery process would not appear to be of assistance to Mr. Bundy's defense.

That is not to say, however, that Plaintiff may not seek further prioritization of certain categories of requested documents over others, as it has done with respect to categories 15 through 20. To the extent Plaintiff seeks such prioritization, it may file a notice with the Court to that effect, and the government shall be provided with an opportunity to respond. Moreover, although BLM estimates that it will take another 90 days to complete its searches and provide a more concrete estimate of the volume of documents to be included in each interim release, given that the Court previously requested this information by April 28, 2017, the Court shall require BLM to expedite its efforts on this front by 30 days. In the meantime, the Court expects that documents shall continue to be produced on a rolling basis.

Accordingly, for the foregoing reasons, the Court hereby

**ORDERS** that BLM shall, by no later than **JULY 14, 2017**, provide an estimate of the volume of documents that shall be included in each interim release of responsive non-exempt documents; and

**FURTHER ORDERS** that Plaintiff may file a response to the pleading setting out this estimate by no later than **JULY 21, 2017**.

The other obligations previously set forth by the Court's April Order remain in effect. In particular, the parties are reminded that Defendant FBI is to file a Status Report by **MAY 31, 2017**, and Plaintiff may respond by **JUNE 7, 2017**.

**SO ORDERED.**

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge