UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FREEDOM WATCH,<br>        Plaintiff,<br>v.<br>BUREAU OF LAND<br>MANAGEMENT, *et al.*,<br>        Defendants. | Civil Action No. 16-2320 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(September 25, 2018)

In this Freedom of Information Act ("FOIA") case, Plaintiff Freedom Watch once again seeks discovery from Defendants Bureau of Land Management ("BLM") and U.S. Department of Justice—specifically the Federal Bureau of Investigation ("FBI")—due to developments in the criminal prosecution of Cliven Bundy, who is not a party here. Pl.'s Mot. for Leave to Conduct Discovery, ECF No. 51 ("Pl.'s Mot."). Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court **DENIES** Plaintiff's latest request for discovery.

The Court shall also address certain of the parties' other filings that affect further proceedings in this case. Among these are the FBI's [39] Declaration of David M. Hardy, and Plaintiff's [40] Response to Court's Order of August 11, 2017. Based on these filings, the Court shall not vary the FBI's current processing rate for Plaintiff's FOIA request, nor, at this time, shall the Court facilitate summary judgment briefing as to Exemption 7(A). Lastly, the Court considers various filings regarding Defendants' live video feed that ultimately do not affect the course of proceedings in this case.

**A. Relevant Background**

The Court begins by reviewing certain prior orders in this case that are pertinent to both discovery and processing speed. At the threshold, the Court observes that on at least three prior occasions, Plaintiff has requested discovery in this case, and the Court has denied each such request.

On May 15, 2017, the Court found that Plaintiff did not originally request expedited treatment of its FOIA request to the BLM, and rejected Plaintiff's argument that, *inter alia*, alleged

---

[1] The Court's consideration of Plaintiff's Motion for Leave to Conduct Discovery has focused on the following pleadings:

- Pl.'s Mot. for Leave to Conduct Disc., ECF No. 51 ("Pl.'s Mot.");
- Defs.' Opp'n to Pl.'s Mot. for Leave to Conduct Disc., ECF No. 52 ("Defs.' Opp'n"); and
- Pl.'s Reply to Defs.' Opp'n to Mot. for Leave to Conduct Disc., ECF No. 53 ("Pl.'s Reply").

1

malfeasance of the Government in other cases warranted expedited treatment now. Mem. Op. and Order, ECF No. 29, at 2 & n.2. "[U]ntil Plaintiff can proffer actual evidence of misconduct specific to this matter, the Court shall pay no credence to Plaintiff's generalized and unsupported claims of misconduct against either Defendants or their attorneys." *Id.* at 2. The Court also determined that, in "the absence of any indicia of bad faith by the government in this matter," there was "no reason to permit discovery at [that] time." *Id.* at 2 n.2 (citing *Landmark Legal Found. v. E.P.A.*, 959 F. Supp. 2d 175, 183 (D.D.C. 2013); *Justice v. I.R.S.*, 798 F. Supp. 2d 43, 47 (D.D.C. 2011), *aff'd*, 485 F. App'x 439 (D.C. Cir. 2012)). Plaintiff's substantive basis for requesting expedited treatment—the exigencies of Mr. Bundy's criminal trial—was not justifiable because, among other reasons, "the proper mechanism for Mr. Bundy to obtain potentially exculpatory evidence is through the criminal discovery process," or, failing that, through a request to the judge hearing that case. *Id.* at 2-3.

Subsequently, the FBI indicated that it expected to require approximately 500 months to complete the processing of Plaintiff's FOIA request. *See* Min. Order of June 13, 2017. Notwithstanding this long timeline, on June 13, 2017, the Court adopted the FBI's proposed schedule of 500 pages per month because Plaintiff did not provide any "objective evidence" in support of its otherwise unsubstantiated objections. *Id.* Yet, the Court "remain[ed] amenable to receiving reasonable proposals from Plaintiff to expedite the production of responsive materials (e.g., by limiting the scope of its requests)." *Id.*

On August 11, 2017, the Court again denied a request from Plaintiff for expedited production and for discovery. With regard to production speed, the Court reiterated that the immediacy predicated on Mr. Bundy's criminal case did not warrant expedited treatment in this case; rather, Mr. Bundy ought to take up the matter with the judge hearing his criminal case. Min. Order of Aug. 11, 2017. As for discovery, the Court found that Plaintiff had still failed to identify any indicia in this case of Defendants' bad faith. *Id*. The Court adopted BLM's proposed processing schedule of 1,000 documents per month and, yet again, "for the time being," FBI's proposed schedule of 500 pages per month. *Id.* The Court ordered each party to submit further briefing regarding aspects of FBI's production rate. That further briefing resulted in the FBI's [39] Declaration of David M. Hardy, and Plaintiff's [40] Response to Court's Order of August 11, 2017, to which the Court shall turn below.

On November 30, 2017, the Court once more denied Plaintiff's request for discovery, referencing some of the prior orders discussed above and finding that "Plaintiff [had] not provided any details in support of its assertion that the search is in bad faith." Mem. Op. and Order, ECF No. 49, at 3-4.

### B. Plaintiff's Motion for Leave to Conduct Discovery

Filed December 19, 2017, Plaintiff's [51] Motion seeks discovery once more, this time based on the purported findings of a whistleblower report that came to light in Mr. Bundy's criminal case. "A district court has 'broad discretion' in denying discovery in FOIA cases." *Cole v. Rochford*, 285 F. Supp. 3d 73, 77 (D.D.C. 2018) (quoting *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 187 (D.D.C. 2011)). "[I]n the FOIA context, courts have permitted discovery only in exceptional circumstances where a plaintiff raises a sufficient question as to the agency's good faith in searching for or processing documents." *Id.* (citing, e.g., *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006)). The cases cited by Plaintiff are consistent

with these propositions and resulted in denials of discovery requests.  *See* Pl.'s Mot. at 4; Defs.' Opp'n at 3.

According to Plaintiff's Motion, the whistleblower report alleges significant misconduct within the BLM and FBI in the events precipitating the Bundy prosecution and in the prosecution itself.  *See* Pl.'s Mot. at 2-3.  Yet again, however, Plaintiff has failed to substantiate his allegations that any such misconduct taints Defendants' processing and production in this case.  *See, e.g.*, *id.* at 3 ("Given these damning revelations, it is no wonder that Defendants here have provided blatantly inflated and outrageous timelines for the production of documents in an attempt to further the cover-up . . . .").

Moreover, the Court's review of the District of Nevada docket in the criminal case against Cliven Bundy illustrates that any urgency to uncover bad faith *in this case* appears to be largely moot.  Shortly after Plaintiff's Motion was filed and fully briefed, the criminal case against Mr. Bundy in Nevada was dismissed with prejudice on January 8, 2018.  Judgment of Dismissal, *United States v. Bundy*, 2:16-cr-00046-GMN-PAL (D. Nev. Jan. 8, 2018) (*Bundy*), ECF No. 3117.  The Government sought reconsideration of that decision, which the court denied on July 3, 2018.  Order, *Bundy*, ECF No. 3273.  In justifying its prior decision, the court stated that "a universal sense of justice was violated by the Government's failure to provide evidence that is potentially exculpatory." *Id.* at 11.  The District of Nevada docket reflects the Government's filing of an appeal to the United States Court of Appeals for the Ninth Circuit on August 2, 2018.  Government's Protective Notice of Appeal, *Bundy*, ECF No. 3306.  Regardless of the outcome of that appeal, however, developments in Mr. Bundy's prosecution have vindicated this Court's decision to defer, repeatedly, to the criminal discovery process and the Nevada judge's handling of any breakdowns in that process.[2]

The closest Plaintiff comes to furnishing any basis for discovery *in this case* is his argument that "what Defendants have produced thus far are overwhelmingly only press articles."  Pl.'s Reply at 2-3 (citing Aff. of Dina James, Pl.'s Ex. 3, ECF No. 53-3).  Plaintiff does not mention, however, the reason that Defendants have given, if any, for not producing many other kinds of documents.  It is quite possible, for example, that Defendants assert FOIA exemptions, such as Exemption 7(A), as to other responsive documents that they have reviewed.  The Court shall require a response from the FBI and, in an abundance of caution, the BLM, regarding the nature of documents that they are not producing.

But absent any affirmative indicia of Defendants' bad faith, the Court is not persuaded at this time that discovery is warranted.  Accordingly, in an exercise of its discretion, the Court shall **DENY** Plaintiff's [51] Motion for Leave to Conduct Discovery.

---

[2] Purportedly on Mr. Bundy's behalf, Plaintiff's counsel in this matter filed a petition for writ of mandamus in the Ninth Circuit regarding the denial of his *pro hac vice* application to represent Mr. Bundy in the District of Nevada.  *See* Copy of Petition for Writ of Mandamus, *Bundy*, ECF No. 3181.  The Ninth Circuit denied the petition on April 24, 2018.  Order of USCA, *Bundy*, ECF No. 3234.  Accordingly, that petition is not a reason for granting discovery here either.

### C. FBI Processing Rate

The Court now turns to several factors that will affect the FBI's processing speed going forward. The Court's Minute Order of August 11, 2017, instructed the FBI to "file a declaration of the responsible FOIA official explaining in detail why its processing is limited to 500 pages per month, and what the consequences would be if the processing speed were increased for Plaintiff's FOIA request." Simultaneously, the Court required Plaintiff to "file a notice stating its position regarding Defendants' proposal to seek summary judgment on Exemption 7(A), which may considerably limit the number of documents that need to be processed by Defendant FBI." Min. Order of Aug. 11, 2017.

The FBI has submitted a declaration regarding its processing rate from David M. Hardy, the Section Chief of its Record/Information Dissemination Section, Records Management Division. Decl. of David M. Hardy, ECF No. 39, ¶ 1. Mr. Hardy documents at length the rationale for the FBI's interim release policy of 500 pages per month. In summary terms, the FBI is experiencing ever-increasing "volume and complexity" of both FOIA requests and FOIA litigation. *Id.* ¶¶ 9-16. The agency has devised methods for allocating its finite FOIA resources between competing demands. *Id.* ¶¶ 5-8. Plaintiff's own FOIA request is exemplary of the strain placed on the FBI's resources: According to the FBI's four-queue classification system for FOIA requests, "[P]laintiff's overall multi-subject request equates to an extra-large queue request as it is in excess of approximately 100,000 pages." *Id.* ¶ 13 n.4.

Just last year, in another case discussing a declaration from Mr. Hardy, the Court of Appeals approved of his "reasonable, non-obstructionist explanation for the interim release policy's 500-page-per-CD limitation," recognizing that this "policy serves to promote efficient responses to a larger number of requesters." *Nat'l Sec. Counselors v. U.S. Dep't of Justice*, 848 F.3d 467, 471-72 (D.C. Cir. 2017).

The processing rate in this case was also justified by the then-ongoing prosecution of Mr. Bundy, together with related investigations and prosecutions. Decl. of David M. Hardy, ECF No. 39, ¶¶ 17-18. Evidently at least some of the same officials involved in those investigations and prosecutions would need to divert further attention to Plaintiff's FOIA request if the processing speed were increased. *Id.* ¶ 18. At the time Mr. Hardy produced this declaration, this was a sensible further reason for the current processing rate, and it may remain so because criminal proceedings involving some of Mr. Bundy's co-defendants are ongoing.

The Court turns to Plaintiff's [40] Response to the Court's Order of August 11, 2017, regarding the summary judgment route for facilitating this case. Plaintiff clearly opposes an assertion of Exemption 7(A) withholding in this case. *See* Pl.'s Resp. to Ct.'s Order of Aug. 11, 2017, ECF No. 40, at 2. Its response also implies that, at least as of August 25, 2017, it did not view summary judgment briefing on this topic to be productive. *See id.* at 1 ("Plaintiff plans to oppose Defendant FBI's proposal to seek summary judgment on Exemption 7(A)."). Perhaps Plaintiff's view on this latter point has changed now that criminal trial proceedings against Mr. Bundy have concluded. In the meantime, the Court shall not instruct the parties to brief a motion for summary judgment as to Exemption 7(A).

### D. Live Video Feed

The Court addresses one final issue that is somewhat distinct from the foregoing. In an unsolicited filing on November 10, 2017, Plaintiff indicated that it "will substantially narrow the scope of its original request in order to expedite production of relevant, discoverable documentation," and proceeded to describe that narrowed scope. Pl.'s Notice of Narrowing in Part FOIA Request, ECF No. 41, at 1. It appeared to the Court that "Plaintiff [was] no longer seeking other documents within the scope of its original request." Min. Order of Nov. 14, 2017. The Court permitted Plaintiff to clarify if Plaintiff in fact intended otherwise. *Id.* Plaintiff responded that it was "not narrowing its request," but that it was pursuing an "interim narrowed request." Pl.'s Resp. to Ct.'s Min. Order of Nov. 14, 2017, ECF No. 45, at 1.

In any event, Plaintiff's interim narrowed request pertained to a certain live video feed. Defendants indicated in response that there was no video recording available, because the surveillance camera in question had conveyed, but had not recorded, live footage. Defs.' Status Report, ECF No. 47, at 1. Notwithstanding the lack of any live feed itself, Defendants represented that they were "searching for records responsive to the subject Freedom of Information Act request that pertain to the live video feed and anticipate that they will complete their search for and production of any non-exempt responsive records located as a result of that search by December 1, 2017." *Id.* at 1-2. The Court instructed Plaintiff to respond, by December 6, 2017, regarding this production. Min. Order of Nov. 28, 2017. Plaintiff's response did not address Defendants' production, if any, regarding documents associated with the live video feed. *See* Pl.'s Resp. to the Ct.'s Order of Nov. 28, 2017, ECF No. 50.

Accordingly, the Court considers the foray into the "live video feed" to be concluded. Because Plaintiff did not (permanently) narrow its request, the scope of Plaintiff's request remains as it did prior to Plaintiff's [41] Notice on November 10, 2017.

### E. Further Proceedings

For the foregoing reasons, in an exercise of its discretion, the Court **DENIES** Plaintiff's [51] Motion for Leave to Conduct Discovery.

Based on the dismissal with prejudice of the criminal case against Cliven Bundy, Plaintiff may be interested in proceeding differently in this case. The Court instructs the parties to meet and confer to identify an appropriate path forward. By **OCTOBER 9, 2018**, the parties shall submit a Joint Status Report conveying their proposal for further proceedings. In light of Plaintiff's [53] Reply to Defendants' Opposition to the Motion for Leave to Conduct Discovery, Defendants shall include in this Joint Status Report a description of the nature of documents that they have produced and that they have been withholding from production.

**SO ORDERED.**

Dated: September 25, 2018

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge